# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID WAYNE HOLLEMAN,<br><br>Defendant. | Case No. CR12-0040<br><br>ORDER FOR PRETRIAL DETENTION |

On the 25th day of May, 2012, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Dan Chatham. The Defendant appeared personally and was represented by his attorney, Dean A. Stowers.

## I. RELEVANT FACTS AND PROCEEDINGS

On May 9, 2012, Defendant David Wayne Holleman was charged by Criminal Complaint (docket number 2 in case number 12-mj-90) with possession with intent to distribute marijuana. At Defendant's Initial Appearance on May 10, 2012, the Government moved for detention and the Defendant requested a preliminary hearing. The Court set a hearing on the motion and request for May 15, 2012. Prior to the hearing, however, counsel notified the Court that Defendant waived his right to a preliminary hearing and agreed to be detained subject to his ability to request and receive a prompt hearing at a later time.

On May 22, 2012, Defendant was charged by Indictment (docket number 2 in the instant action) with possession with intent to distribute marijuana, and the Court scheduled Defendant's arraignment for May 25, 2012. Also on May 22, Defendant requested the detention hearing be reset, and the Court set the detention hearing for the same time as the

1

arraignment. At the arraignment, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on July 23, 2012.

At the hearing, Cedar Rapids Police Officer Nick Nolte testified regarding the circumstances underlying the instant charge.[1] On May 8, 2012, DEA Task Force Officer Josh Lupkes called Nolte regarding a phone call Lupkes received from an Iowa State Patrol Trooper, who conducted a traffic stop on Interstate 80 in western Iowa. The trooper relayed to Lupkes his suspicions regarding the vehicle that was stopped. Defendant was the owner and driver of the vehicle that was stopped by the trooper. According to the trooper, Defendant acted nervously during the stop and had difficulty explaining where he was traveling. Eventually, Defendant stated that he was on a cross-country trip from Washington state to Washington, D.C. Defendant told the trooper that he was planning to stop in Cedar Rapids, Iowa, to visit a friend. Defendant denied consent to search his vehicle. The trooper deployed his K-9, but the dog would not search due to a dead animal on the side of the interstate. Following the attempted K-9 sniff, Defendant was allowed to leave at approximately 4:30 p.m.

Upon learning this information, Officer Nolte went to a rest area outside Grinnell, Iowa, and watched for Defendant's vehicle. At approximately 7:00 p.m., law enforcement observed Defendant's vehicle and followed it to the Williamsburg, Iowa exit. Defendant went to a hotel and obtained a room for the night. When the desk clerk asked Defendant for his license plate number, Defendant stated that the vehicle was not his, and he didn't know the license plate number. After checking into the hotel, Defendant drove to a nearby restaurant. When he returned to the hotel, Nolte called for a K-9. The dog and his handler walked around several vehicles in the hotel parking lot, and only indicated on Defendant's vehicle.

---

[1] Officer Nolte is presently assigned to the Cedar Rapids DEA Task Force.

2

Officer Nolte and another officer then went to Defendant's room. The officers asked Defendant to accompany them outside to his truck. The officers informed Defendant that a K-9 alerted on his vehicle. Defendant denied consent to search his vehicle.

Law enforcement then obtained a search warrant for the vehicle. The truck was moved one mile south of the hotel to the Williamsburg Fire Department. Two large welders in crates were located in the back bed of the pick-up truck. In searching one of the welders, Officer Nolte discovered that the gas cap had been glued shut. Further investigation revealed they were hollowed out and both contained five 25-pound bundles of marijuana. In total, law enforcement found approximately 259 pounds of marijuana.

According to the pretrial services report, Defendant is 53 years old. He was born in Charlottesville, Virginia, and grew up in Washington, D.C. In 1988, Defendant moved to San Diego, California. In 2000, Defendant relocated to Los Angeles, California. Defendant told the pretrial services officer that he has lived with his ex-wife in Los Angeles for the past two years. However, Defendant also told the pretrial services officer that he recently rented a room in Spokane Valley, Washington. According to Defendant, he attempted to set up a video and graphic design business in Spokane Valley, but it did not "pan out." Defendant's mother and sister reside in Pooler, Georgia.

Defendant was married from 1997 to 2011, and is now divorced. He has no children from that marriage. Defendant has been unemployed for the past 18 months. He lasted worked for Blue Water Sailing in Marina Del Ray, California, in 2009 and 2010. Defendant is in good physical health, and reports no history of mental or emotional health concerns. He also reported no history of alcohol abuse, and denied the use of controlled substances. Defendant has no prior criminal history.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984,

while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

4

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

5

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with possession with intent to distribute marijuana. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, pursuant to § 3142(e)(3)(A), there is a rebuttable presumption in favor of detention. The weight of the evidence against Defendant is strong. When encountered by law enforcement, Defendant was driving a pick-up truck owned by him from Washington state to Washington, D.C. Two large welders where located in the bed of the pick-up truck. Defendant told a trooper that one of the welders belonged to him and one belonged to a friend. At a hotel parking lot in Williamsburg, Iowa, a K-9 alerted on Defendant's vehicle. Law enforcement obtained a search warrant for Defendant's vehicle, and found that the two welders in the bed of Defendant's pick-up truck were hollowed out and contained approximately 259 pounds of marijuana.

The Court is concerned that Defendant lacks a stable residence. Defendant told the pretrial services officer that he has lived with his ex-wife for the past two years in Los Angeles, California. However, Defendant also told the pretrial services officer that he recently rented a room in Spokane Valley, Washington. Moreover, during the traffic stop on May 8, 2012 in western Iowa, Defendant told the trooper that he was traveling from Washington state to Washington, D.C. Defendant's mother and sister live in Pooler, Georgia. Defendant has no children. He has been unemployed for the past 18 months.

The Court also finds it significant that the circumstances of this case suggest a large-scale and sophisticated drug distribution system – 259 pounds of marijuana were found in 2 large hollowed-out welders located in Defendant's pick-up truck. If convicted, Defendant faces a minimum of 5 years in prison. Therefore, based on the serious nature and circumstances of the offense, the strong evidence against him, Defendant's lack of employment or strong ties to a community, and the rebuttable presumption in favor of detention, the Court has no confidence that any condition or combination of conditions

would assure Defendant's appearance for future court proceedings. Accordingly, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from Defendant's request for a detention hearing (May 22, 2012) to the filing of this Ruling (May 25, 2012) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 25th day of May, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA